————o————

E. L. JILLETT, *et al.*, Plaintiffs in Error, *vs.* UNION NATIONAL BANK, *et al.*, Defendants in Error.

1. *Probate Court—Administration—Assignment of claim—Error in, corrected nunc pro tunc, when—Injunction—Equity, etc.*—A clerk of probate being mis-led by an erroneous memorandum of the judge, assigned the claim of A, which properly belonged to the 6th class in an administrator's settlement to the 5th class, thereby causing said claim to be paid, and sacrificing others of the 6th class.

A creditor of the 6th class at a term subsequent to the erroneous assignment brought suit against A and the administrator, to enjoin A from proceeding to enforce his claim and to compel the administrator to assign said claim to the proper class:

*Held:* 1st, that the remedy of plaintiff was by a motion in the Probate Court to correct the error *nunc pro tunc* and not by injunction; 2nd. that although plaintiff was ignorant and A was aware of the mistake at the term wherein it occurred, and during which appeal would lie to remedy it, yet there being no relation of trust between A and the plaintiff requiring a disclosure of the facts, and no trick or artifice to produce or conceal the mistake being shown, plaintiff had as against A no equity on this ground.

### Error to St. Louis Circuit Court.

*S. N. Taylor*, for Plaintiff in Error.

I. The Probate Court cannot change the classification of demands against an administrator's estate at a subsequent term. (Miller vs. Janney, 15 Mo., 265; Nelson vs. O'Brien, *Id.*, 357.)

Motion to correct will not lie in such case.

II. The case of Gibson vs. Chouteau, (45 Mo., 173,) was one where the mistake was that of the clerk and not the court. But where the court omits an order which it ought to have made, the error cannot correct the error *nunc pro tunc.* (Hyde vs. Curling, 10 Mo., 359.)

*T. K. Skinker*, for Defendants in Error.

SHERWOOD, Judge, delivered the opinion of the court.

The plaintiffs had certain claims allowed in the Probate Court of St. Louis County against the estate of Turner Maddox, deceased, and placed in the 6th class. At a subsequent period, but during the same term, the Union National Bank, also had two claims probated against the same estate. These claims should likewise have been placed in the 6th class, and had it not been for the clerical mistake of the probate judge in indorsing a memorandum on the claims, to the effect that they belonged to the 5th class, a proper classification would have taken place; as the clerk, misled by the erroneous memorandum of the judge conformed his record entries to such memoranda. The plaintiffs were unaware of this error having been committed, until the time had elapsed for taking an appeal. The Union Bank discovered the error committed in its favor during the term at which it occurred, but did not communicate that fact; and when applied to by plaintiffs after the close of the term at which the allowances were made, declined to have any correction made therein. The 1st, 2nd, 3rd and 4th class claims against the estate were paid, and a sufficiency of assets was left to pay the 5th class, and something over twenty-five per cent. on that to which the claims of plaintiffs belonged, unless the claims of the Bank are permitted to remain as originally and erroneously classed. A petition making the above allegations, and further in effect alleging, that the failure of the Bank to disclose the mistake which had occurred in the classification of the claims in its favor, was a fraudulent concealment of facts of which it now sought to unfairly avail itself was filed by plaintiffs, and their prayer was: "That said claims in favor of said Bank * * * * be placed in the 6th class of claims against said estate; that said Union National Bank be prohibited and enjoined from enforcing its said claims as 5th class claims against said estate; that Andrew W. Mead administrator of said estate be prohibited and enjoined from paying said claims and judgment in favor of said Bank as 5th class claims;

but that they be adjudged in all respects as 6th class claims, and payments made on them in all respects as 6th class claims, and payments made on them only as on other 6th class claims against said estate, and for such other and further relief, as to the court may seem equitable." This petition was held insufficient on demurrer, and the propriety of this ruling is now to be considered.

The insufficiency of the petition is apparent for two reasons, without adverting to any more : First—It is · evident that an ample remedy exists at law for the redress of the grievance whereof the plaintiffs complain; Second—If no such remedy could be attained by legal procedure, still the petition states no grounds for equitable interposition. The mistake complained of could be corrected by an entry *nunc pro tunc*. The right to correct mistakes and misprisions by an entry of this sort, attaches as a necessary incident to the jurisdiction of every court of record, whether such jurisdiction be general or limited. And according to the plaintiffs own showing, the necessary data to amend by, are furnished by the *memoranda* indorsed on the claims, and the record entries in relation thereto. The doctrines respecting amendments of this character, have been heretofore so exhaustively considered by this court, and so firmly established by its former adjudications, that further discussion of the subject at my hands is entirely unnecessary. (Gibson vs. Chouteau, 45 Mo., 173, and cases cited ; Benoist, Excr. vs. Christy, 50 Mo., 145 ; Priest vs. McMaster, 52 Mo., 60.)

The cases of Miller vs. Janney's Excr., 15 Mo., 265, and Nelson vs. Russell's Admr., *Id.*, 356, cited by plaintiffs as being in point, by no means infringe upon, or gainsay, the above mentioned rule. It is not the office or purpose of a *nunc pro tunc* entry to set aside a judgment rendered at a former term ; but, as the very words import, to make the record disclose the judgment which the court actually gave at the time referred to in the amended entry. But the petition shows no grounds why equity should interpose even if there were no remedy at law. Had there been any relations of especial

trust and confidence existing between the parties, or had the bank been under some legal or equitable obligation to communicate to the plaintiff its discovery of those facts which would have operated in its favor, and adversely to their interests; or had the Bank been active in occasioning the mistake, or used trick or artifice to prevent its becoming known, a question widely different from the one presented by the petition would be here for our consideration. The above stated doctrine is applied by the books to cases even where parties deal and contract directly with each other;⁻ and, *a fortiori*, it should with greater force apply to a case like the present, where no such dealings have taken place. And it would be in the face of all the authorities, to hold a party chargeable with fraudulent concealment merely because of the non-disclosure of a fact which neither law nor equity require to be disclosed. (1 Story Eq. Jur. §§ 204, 205, 206, 207 ; Kerr on Fr. & Mist pp. 353, 408, 414.)

Judgment affirmed ; the other judges concur.